Next case for argument is 15-3191, Mithen v. DVA. Good morning, your honors. Kirk Comiskey for the appellant, Dr. Francis Mithen, who's accompanying me here today to continue to look for that firm belief that the agency would have done the same thing in the absence of his protected disclosure. Initially, I would tell you that this is an appeal from two Merit Systems Protection Board decisions, two administrative judge decisions that were both appealed. The first board remanding it back to the administrative judge, and then the second MSPB decision being appealed to you all here at the Federal Circuit. You're presented with somewhat of a, or at least it's been filed. I'm not sure if it's ruled on by this panel, an issue of the agency supplementing their discovery responses. We haven't invoked the jurisdiction of this court lightly to bring this appeal. We also... Your motion to compel, so you want us to take this evidence in the first instance, require the government to come forward with it and consider it as part of this appeal, whereas it's never been adjudicated below? Is that what you're seeking? It has not been considered below, this evidence that we asked. Do you have any other example where you've ever done that? I have not done that, no. We made a FOIA request. We asked the agency to provide us with the information. We asked the board to order the agency to provide us with the information. Our last step was presenting that issue to the Federal Circuit. If that would happen and they would be ordered to provide the information that we think is relevant and material to this case, we would respectfully suggest that a short period of time would be allowed for us to submit what should happen in light of that information. Why isn't the more appropriate thing is if this case concludes, you go back to the board, I assume, and our friend may be able to tell us, that the board has procedures for your going and asking them to reopen the case. You've got to make a showing of whatever showing you need to make for them to say you've got enough and it's new evidence, it wasn't previously available, and it's enough to persuade them. Whether they buy that or not is another matter, but why isn't that the way it usually works? I researched this issue. I did not find the way that it usually works. Usually, it's pending before perhaps the MSPB when the newly discovered evidence comes to light. In this case, it happens to be that this information came to light two months ago during the pendency of this appeal. Why don't we move on to a more mature case? So, again, obviously, as the VA will tell you, and I think is set out in two pretty well-written briefs by the parties to this case, your scope of review is limited in what you can consider. It doesn't look clear that he was demoted because the medical school would have withdrawn their residents from Dr. Miffen's supervision if he hadn't been moved aside. Sure. Just so it's clear, he was detailed. That is the issue that we're bringing forward at this time. You're putting your finger on an important point, Judge, which is that March 28, 2011 letter from St. Louis University that said, we're going to pull all of our residents if you don't do something about Dr. Miffen. The reason is that the agency has given us different reasons throughout the process. In the parlance of federal employee disciplinary matters, their reason has shifted along the way. Initially, they told us, and we set it out in our brief, that it was the results of the administrative investigative board investigation was the reason for the detail. Then it was, according to Dr. Tamek, he has had impermissible contact with residents during a time where he's been instructed to have no contact with residents. And finally, we're at a point where the reason is, oh, we have this letter from St. Louis University that only came to light after a telephone conference between Dr. Tamek and the St. Louis University representatives. But all of that related to one point, which is that he was felt to have abused or dealt poorly with the residents. Right, and I agree that that is what the letter alleged, but that letter only occurred after an investigation of 16 of Dr. Miffen's colleagues revealed no evidence on which to take any disciplinary action against him. Yeah, but that argues for us to re-weigh the evidence on both sides. We have a very deferential review requirement at this level. We have to find that the decision is arbitrary or capricious. We can't, we're not looking at preponderance of the evidence or anything like that. Sure, or unsupported by substantial evidence, which is how we try to frame the issues that we brought forward, which we think are many with the board's decision. Yeah, but you've got a lot of credibility findings here too, which are almost insurmountably difficult to overturn. We understand that, and that's why the law is stated a variety of ways, but it's essentially that credibility is unreviewable on appeal. The administrative judge, the initial fact finder, is the one who gets to make credibility determinations. That's why we brought forth the issues that we brought forth. It also ties into this issue of what has come to light with Dr. Tomek in the interim in credibility, because we didn't raise credibility below. It was raised by the board itself, and this is one of the important things about this appeal. The board said, Judge Moran, you did not correctly consider, you didn't make the required credibility findings to allow us to determine what really happened here. But then they sent it back. They sent it back, but she still didn't make those required credibility determinations. The board said in their first decision... Is that not what happened? I wouldn't say that we said you do what you need to do with regard to credibility or whatever. But you took the position it ought not to be sent back to the administrative judge. The board ought to decide it. That is correct, and we said that the last issue for you to decide, board, is whether there's clear and convincing evidence that the agency would have taken the same action in the absence of the protected disclosure. And really, that is the only issue that's presented here. There are some other interesting issues that have been decided before that neither side has appealed. But you see, we can't ask the question whether there was clear and convincing evidence. Correct. That question is not before us. The question is, is there substantial evidence in the record to support the MSPB's conclusion? And I think that this court has previously said that you've got to look at everything. We framed the Whitmore language in terms of the standard of review, whether you faithfully considered the evidence that both supports and detracts from the decision that was made. And then we tried to point out where the board, unfortunately, did not do that. One real glaring issue is that on the one hand, the board said there was a protected disclosure because this was not well known that St. Louis University had influence in the selection decision for the chief of neurology. On the other hand, and this is set out in our brief, they said there was no motive for Dr. Tomek to retaliate because the influence of St. Louis University in the selection decision was well known. So those are things that just cannot be reconciled. I would submit, as a matter of law, unsupported by competent and substantial evidence on the record, or just arbitrary, because it seems arbitrary to us. But a lot of these things also go to the strength of the evidence. Was the evidence of the agency strong when you consider that which both supports and detracts from their conclusion? What remand are you seeking here? We are seeking a remand to the Merit Systems Protection Board with directions. What would we tell them? You know, one of the things that they haven't done is, it goes back to their first decision, which is make the required credibility determinations in light of these things that they pointed out. There's conflicts between the agency witnesses as to why they detailed appellant at the time that they detailed him. They weren't prepared to take him out of his position. They had to put an endocrinologist in the position of the chief of neurology because they had not taken the steps that were necessary to cover the work. There were other things including, excuse me, the... You're basically asking us to send it back for a rehearing. Well, it would be along the lines of a rehearing but not a rehearing where an actual hearing takes place to properly consider the evidence that they have acknowledged exists in the record but have made incorrect conclusions from. Conclusions that just defy common sense. The known and unknown aspect of whether Slew had influence in the selection process is an awfully good example of that. It's irreconcilable. The record is full of all kinds of evidence of his conflict, Dr. Milton's conflict, with various people. With having issues with communication with residents. He was supposed to be heading this thing and they decided we need somebody else. He created a hostile learning environment, isn't that the language? Yeah, hostile environment. I think they left off learning or perhaps someone did use the learning environment term. But that's what was investigated by the Administrative Investigative Board. And they said we don't find evidence of these most heinous of allegations against you. We do think that you could use some training on your communication techniques, which they allowed him in their good judgment to do on his own. As well as reviewing his work in consultation performance, which they found to be excellent. Why don't we save your time for rebuttal and hear from the other side. Thank you, Judge. Thank you. Good morning, Your Honors. May it please the Court. We ask this Court to affirm the decision below because the Board's conclusion that the agency would have detailed Dr. Milton in the absence of his protected disclosure is supported by substantial evidence. The substantial evidence that the Board relied on was a series of events that went back more than a year before the decision to detail Dr. Milton was made. These events led up to the decision and they show that the decision was not based on his protected disclosure. That the agency would have taken the personnel action in the absence of the protected disclosure. These events began when St. Louis University learned of a hostile learning environment and a fear of retribution amongst the neurology residents. The university then investigated and informed the VA Medical Center of their concerns that Dr. Milton had contributed to the hostile learning environment. The VA Medical Center then conducted its own investigation and appointed an administrative investigative board which interviewed 16 witnesses and produced a written report which showed that there were many concerns about Dr. Milton's performance. After the administrative investigative board produced its report, the director of the VA Medical Center then asked her chief of staff, her acting chief of staff, to conduct further investigation to determine if disciplinary action was appropriate. Thereafter, the director issued her own memo recommending a professional improvement plan. The acting chief of staff then met with Dr. Milton, informed him of the investigation results and the professional improvement plan. The day after that meeting is when Dr. Milton made his protected disclosure. But this is more than a year after the concerns were raised to the university and six months after the medical center began its investigation. Shortly after that meeting, the university informed the medical center that it would significantly curtail the residency program unless Dr. Milton was formally removed from any kind of oversight of the residents. Shortly after that, the agency made a decision to formally detail him to a staff neurology position and Dr. Milton was informed of that. At the time that he was informed of that detail, he testified that he was told that the agency made its decision based on the input from the university. These events provide the substantial evidence that support the board's decision. And for these reasons and those laid out in our brief, we respectfully request that the court affirm the decision below. Can I just ask you something about the motion to compel? The motion to compel? Certainly. So assuming this case ends at some point, is there a procedure available? I have no idea about the relevancy of this evidence or whatever, but isn't there a procedure available whereby a petitioner would go back to the board and say, hey, you've got to reopen my case because there's new previously unavailable evidence? So is that the way it's usually handled? Because I don't recall ever seeing a motion to compel up here at this level at this time. Now, I understand they went to the board and the board said, well, we don't have the case because it's on appeal. So I appreciate why things happened the way they did. But there is an alternative potential for recourse, correct? There is a procedure. The board has a procedure set out, I believe, in the CFR regulations whereby a petitioner can seek to reopen the record before the board. I do not know if that can be done after this court makes a decision on the case. Would we have to remand in order for that procedure to be available to him? Or could we decide the case hypothetically decided against him? Obviously, if we decided for him, there's no issue. But if we decided the case against him, would that bar him from going back to the board? Your Honor, I am not sure. It was my understanding, and you're the expert, but if it's a motion to reopen, that presumes that something has been closed, right? That's correct, Your Honor. The board's rules provide that the record generally closes, the administrative judge generally closes the record at the end of the, or determines when the record is closed, generally at the end of the hearing or after post-hearing briefs. As we set forth in our opposition to petitioner's motion to essentially compel the agency to produce additional discovery on appeal, the record before this court is closed. The board does have a procedure to reopen the record if certain requirements are met, materiality, and showing that the evidence was not available at the time when the record was opened. And so it seems to me, just based on my general knowledge of appellate procedure, if this court remanded, the board would be able to consider those. However, the case is not before the board right now, and that is why they have... No, but my question, and I think this is what Judge Plager was getting to, if we decide this case, can they not go back to the board and move to reopen a case that's been finally decided and closed based on the discovery of new and material evidence? I have not researched that issue, but it seems like they would not be able to, because once this court... They would not be able to? That would be my... I believe that would be the case. If you, speaking for the government, said they would be able to, that would solve the problem. And I'm not prepared to do that today. Once this court makes a decision, it seems like that decision should be final. And seeking to then reopen a record on a case that has been decided by an administrative judge and the board and this court seems to go against the judicial finality. Although I have not researched that specific point before the board. All right, thank you. So basically you're saying there is no procedure once we decide the case. That would be my impression. I'm not an expert of procedure before the board itself, but as a general appellate practice, the general matter of appellate practice, once this court issues its decision, that decision stands. We're dealing with an administrative agency, and administrative agencies have rules that are different from everybody else in the world. That is certainly true. What you're also saying is you're not here to give legal advice concerning future remedies of petitioner. Yes, Your Honor. And if petitioner, if this court makes its decision and petitioner seeks to reopen before the board, the government will certainly have its opportunity to oppose that or to consent in the future. I suppose we could decide it without prejudice to reopening it. That's true, Your Honor, and leave it up to the board to decide its own procedures as far as what it would do with that, with his request after this court has acted. Thank you. Thank you, Your Honors. I don't have a lot to add, Your Honors, to that. I researched the issue, too, on this motion to compel, for lack of a more accurate term. There is a, excuse me, the board does have, there's a regulation, I believe, on newly discovered evidence, but it's not clear on if it could be invoked if a decision was issued by the federal circuit. My gut feeling, I think, is similar to Ms. Zavodkin's, which is this decision would be final without researching it further. I just, again, I'm sure you've looked at what we've submitted. I think the parties have both submitted thorough and well-considered information to you all in our briefs, and I think that we have provided, as best we could, in light of the information available to us, the reasons why this should be, the board decision should be reversed, the second board decision should be reversed with directions to consider the information that we believe is wrongly considered, inappropriately omitted from their consideration, or is otherwise just considered for a wrong conclusion. So in light of those things, we would request that the board's decision be reversed in favor of the appellant, and or that the motion to compel be granted with an opportunity to submit some sort of a motion. We don't know what the information is going to, to be fair to everyone, the information may not be relevant if we get it, but it very well could be, and at that point, we may say, oh, it's a lot more clear now, this should all be sent back for the board, since credibility was such a big part of their decision, it's undeniable that it was, for further consideration in light of this newly discovered evidence. Thank you. Thank you. I think both sides of the case have submitted.